AARON D. DUNHAM (WSBA No. 46405)
WOLFF, HISLOP & CROCKETT, PLLC
12209 E. Mission Ave., Suite 5
Spokane Valley, WA 99206
Telephone (509) 927-9700
Fax (509) 777-1800

Attorneys for Defendants
AMERICAN CREDIT ACCEPTANCE, LLC,
PAR, INC., and JILLIAN RAE LEE-BARKER
dba COEUR D'ALENE VALLEY RECOVERY SERVICES

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

SPOKANE DIVISION

| | |
|---|---|
| HECTOR LOYOLA and LINDA LOYOLA,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN CREDIT ACCEPTANCE, LLC, PAR, INC., and JILLIAN RAE LEE-BARKER dba COEUR D'ALENE VALLEY RECOVERY SERVICES,<br><br>Defendants. | Case No.: 2:19 CV-2<br><br>DEFENDANTS' MOTION TO: (1) COMPEL ARBITRATION AND (2) DISMISS ALL CLAIMS<br><br>04/10/2019<br>Without Oral Argument |

# FACTUAL BACKGROUND

**I.  The Loyolas agreed to arbitrate and that agreement was assigned to ACA.**

In 2016, Hector and Linda Loyola signed a Retail Purchase Agreement and Retail Installment Contract with a car dealership to buy a used 2012 Dodge Journey (Coleman Decl. p. 3, ¶¶ 6–7; *see also* ECF No. 1 at 2, ¶ 1)[1]

The Retail Purchase Agreement says: "[T]his document and any documents which are part of this transaction or incorporated herein comprise the entire agreement affecting this Retail Purchase Agreement . . . ." (Coleman Decl. p.7, Ex. A last paragraph) This statement is directly above the Loyolas' signatures. (Coleman Decl. p. 7, Ex. A)

It also says: "The front and back of this Agreement and any documents which are part of this transaction or incorporated herein by reference comprise the entire agreement affecting this transaction." (Coleman Decl. p. 9, Ex A ¶ 19)

It defines "Agreement" as: "[T]his Retail Purchase Agreement together with any documents incorporated into this Agreement by reference . . . ." (Coleman Decl. p. 8, Ex. A ¶ 1)

---

[1] The Defendants cite the Complaint (ECF No. 1) to show the claims are subject to arbitration. The Defendants reserve the right to deny the Complaint's allegations in arbitration or a responsive pleading.

It incorporates the Retail Installment Contract by reference, since the arbitration provision says it applies to claims relating to the "Retail Installment Contract." (Coleman Decl. p. 9, Ex A ¶ 20)

The dealership assigned its interest to American Credit Acceptance, LLC (ACA). (Coleman Decl. p. 3, ¶ 8; *see also* ECF No. 1 at 2, ¶ 1)

Eventually, the Loyolas fell behind on their payments. (Coleman Decl. p. 3, ¶ 9; *see also* ECF No. 1 at 2 ¶ 1) ACA retained PAR, who retained Lee-Barker, to repossess the vehicle. (Coleman Decl. p. 3, ¶ 9; *see also* ECF No. 1 at 2, ¶ 2). After the Loyolas paid the amounts owing to ACA, the vehicle was returned. (Coleman Decl. p. 3, ¶ 9.)

The Loyolas sued ACA, PAR, and Lee-Barker, alleging wrongful repossession. (*See generally* ECF No. 1)

**II.    The arbitration provision requires the Loyolas to arbitrate.**

The Retail Purchase Agreement says:

> 20. AGREEMENT TO ARBITRATE: Purchaser(s) and Dealer ("Parties") agree . . . to resolve by binding arbitration any Dispute that arises between them under or relating to this Agreement, whether based in part or in whole on contract, tort, common law, statute, regulation or equity, including . . . any dispute related to or arising out of . . . the Vehicle . . . , the Retail Installment Contract . . . , and any claims regarding the validity, enforceability or scope of this Arbitration Provision . . . .
>
> Arbitration proceedings shall be initiated and conducted before a single arbitrator selected in accordance with the

Defs' Mot. to (1) Compel Arb. and (2) Dismiss All Claims
pg. 3

>   Arbitration Rules then in effect of the selected Alternative Dispute Resolution Agency. . . .
>
>   The Parties expressly agree that the Federal Arbitration Act (9 U.S.C § 1, et seq.) shall govern any arbitration under this Agreement . . . .

(Coleman Decl. p. 9, Ex. A, ¶ 20)

The Loyolas signed the Retail Purchase Agreement, which contained the arbitration provision, and which incorporated the Retail Installment Contract. (*See* Coleman Decl. p. 7, Ex. A) In their Complaint, the Loyolas acknowledge the existence of the Retail Installment Contract and make allegations "related to or arising out of" the vehicle or the Retail Installment Contract. (*See generally* ECF No. 1)

The Defendants invoked arbitration on February 5, 2019, but the Loyolas refused to arbitrate. (Dunham Decl. p. 2, ¶¶ 3-4)

## ARGUMENT AND CITATION TO AUTHORITY

Federal law requires this Court to compel the Loyolas' claims to arbitration. Arbitration provisions like this one are presumed valid and the requirements in Section 2 of the Federal Arbitration Act (FAA) for enforcing such provisions are met here. So the Court should grant this motion.

**I.    Arbitration provisions are presumed valid.**

The FAA says arbitration provisions "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Congress enacted the FAA "to overcome judicial

hostility to arbitration agreements . . . ." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 272 (1995). With the FAA's enactment, Congress tried "to avoid 'the costliness and delays of litigation,' and to place arbitration provisions 'upon the same footing as other contracts.'" *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974) (citations omitted). With this congressional intent in mind, the United States Supreme Court has recognized that "attacks on arbitration 'res[t] on suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants,' and as such, they are 'far out of step with our current strong endorsement of federal statutes favoring this method of resolving disputes.'" *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 30 (1991) (citation omitted).

Congress, by enacting the FAA, and the Supreme Court, by interpreting it, together created a strong federal policy favoring arbitration. *See generally Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983). This policy is so strong that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Id.* at 24-25 (emphasis added). It is against this backdrop that the Court must decide this motion.

**II.    The FAA's requirements for enforcing the arbitration provision are met.**

Besides being presumed valid, the FAA mandates enforcement of arbitration provisions if three requirements are met: (1) there is a written

arbitration provision; (2) there is a nexus to interstate commerce; and (3) the arbitration provisions covers the claims. *See* 9 U.S.C. § 2 ("A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."). Here, all three requirements are met.

### A.   The arbitration provision is in writing.

It is undisputed that the arbitration provision is in writing. The Loyolas signed the Retail Purchase Agreement, which contains the arbitration provision; and the Retail Purchase Agreement calls attention to the arbitration provision just above their signatures. (Coleman Decl. p. 7, Ex. A)

### B.   The transaction involved interstate commerce.

The Retail Purchase Agreement says: "The Parties expressly agree that the Federal Arbitration Act (9 U.S.C. § 1, et. seq.) shall govern any arbitration under this Agreement." (Coleman Decl. p. 9, Ex. A ¶ 20) When arbitration provisions say the FAA governs, courts should enforce this term. *See Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 302-03 (6th Cir. 2008). Because the provision says the FAA governs, the second requirement is met.

But even if the arbitration provision did not say the FAA governs, the transaction still would have involved interstate commerce. The FAA's term

"involving commerce" is equal to "affecting commerce." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003). "Congress' Commerce Clause power may be exercised in individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic activity in question would represent 'a general practice . . . subject to federal control.'" *Id.* at 56–57 (quotation marks and citations omitted).

Congress has the power to regulate financial activities under the Commerce Clause. *See Citizens Bank*, 539 U.S. at 56–58 (finding that the transaction involved commerce because it dealt with "debt-restructuring agreements"); *see also Lewis v. BT Investment Managers, Inc.*, 447 U.S. 27, 38 (1980) ("[B]anking and related financial activities . . . [have] important interstate attributes."); *Perez v. United States*, 402 U.S. 146, 154 (1971) ("[C]redit transactions, though purely intrastate, may in the judgment of Congress affect interstate commerce.").

What's more, a transaction to buy a vehicle affects interstate commerce. *See Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 698 (4th Cir. 2012) ("'[T]he broad impact of consumer automobile lending on the national economy' is evident." (citations omitted)); *United States v. Evans*, 272 F.3d 1069, 1080 (8th Cir. 2001) (noting that "the transaction—the purchase of an automobile from a commercial used car dealer—is sufficient, by itself, to have an effect on interstate commerce").

The facts show that interstate commerce was involved. ACA is a South Carolina company. (ECF No. 1 at 3, ¶ 7) ACA used an Indiana corporation (PAR), which used an Idaho resident (Lee-Baker), to repossess the vehicle from Washington citizens (the Loyolas). (ECF No. 1 at 3 ¶¶ 6, 8–9.) So there was an effect on interstate commerce.

Whether because (1) the arbitration provision says that the FAA governs, or (2) the facts show that the transaction involved interstate commerce, the FAA applies. So the second requirement for enforcing the arbitration provision is met.

### C. The arbitration provision covers the claims, but even if there is a question about whether it should be enforced, that question should be reserved for the arbitrator.

The arbitration provision covers the Loyolas' claims. It covers claims "relating to this Agreement, whether based in part or in whole on contract, tort, common law, statute, regulation, or equity. . . ." (Coleman Decl. p. 9, Ex. A ¶ 20) And it covers claims about the "vehicle" and claims about the "Retail Installment Contract." (Coleman Decl. p. 9, Ex. A ¶ 20)   This language is broad enough to encompass the Loyolas' claims. (*See generally* ECF No. 1)

But the Court need not make that determination. Washington State law lets parties "delegate the question of arbitrability to the arbitrator." *Raven Offshore Yacht, Shipping, LLP v. F.T. Holdings, LLC*, 199 Wash. App. 534, 538 (Wash. Ct. App. 2017). The Supreme Court held that when a "contract delegates the

arbitrability question to an arbitrator, the courts must respect the parties' decision . . . ." *Henry Schein, Inc. v. Archer & White Sales, Inc.,* 139 S. Ct. 524, 528 (2019).

The arbitration provision applies to "any claims regarding the validity, enforceability or scope of this Arbitration Provision." (Coleman Decl. p. 9, Ex. A ¶ 20) So even if the Loyolas argue that it should not be enforced, that is for the arbitrator to decide.

All three requirements to enforce the arbitration provision are met, so the Court should grant this motion.

### III.  ACA may enforce the arbitration provision as the dealership's assignee.

ACA, as the dealership's assignee, may enforce the arbitration provision. "An assignee steps into the shoes of the assignor, and has all of the rights of the assignor." *Estate of Jordan v. Hartford Accident & Indem. Co.,* 120 Wash. 2d 490, 495 (Wash. 1993).

### IV.  PAR and Lee-Barker may enforce the arbitration provision under the theories of agency and equitable estoppel.

Although PAR and Lee-Barker are not parties to a contract with the Loyolas, the arbitration provision applies to them through agency and equitable estoppel.

"Generally, an arbitration agreement binds only the parties to that agreement." *Raven*, 199 Wash. App. at 541. But "[a] nonsignatory may be bound to an arbitration agreement through contract or agency principle." *Id.* (citing *Comer v. Micor, Inc.,* 436 F.3d 1098, 1101 (9th Cir. 2006)). The principles

"include incorporation by reference, assumption, agency, and estoppel." *Raven*, 199 Wash. App. at 541.

One reason for the agency exception is that "an arbitration agreement would be of little value if it did not extend to [a company's] agents." *Id.* (citations and quotation marks omitted). The *Raven* court decided that the arbitration agreement applied to a non-signatory defendant based on agency principles, when the plaintiff alleged that the non-signatory "was acting for and on behalf of [the other] Defendant . . . ." *Id.*

Like that plaintiff, the Loyolas allege: "[E]ach defendant was the agent or employee of each of the other defendants and was acting within the course and scope of such agency or employment." (ECF No. 1 at 3, ¶ 10) So, through the principle of agency, the Loyolas' claims are subject to arbitration.

And equitable estoppel applies. "Equitable estoppel 'precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.'" *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (quoting *Wash. Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 267 (5th Cir. 2004)). There are two reasons that a nonsignatory may invoke equitable estoppel:

> (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract, and
> (2) when the signatory alleges substantial interdependent and concerted misconduct by the nonsignatory and

> another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement.

*Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128-29 (9th Cir. 2013).

"*Signatories* have been required to arbitrate claims brought by nonsignatories 'at the nonsignatory's insistence because of the close relationship between the entities involved.'" *Comer*, 436 F.3d at 1101 (citation omitted) (emphasis in original). "This rule reflects the policy that a plaintiff may not, 'on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory.'" *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013) (citation omitted).

The Loyolas reference the Retail Installment Contract and all their claims arise out of their agreement with the dealership, which the dealership assigned to ACA. (ECF No. 1 at 2, ¶ 1) The Retail Installment Contract requires the Loyolas to make timely payments or otherwise become subject to repossession. (Coleman Decl. p. 13, Ex. B ¶ 3(d)). The Loyolas allege misconduct during the repossession, and the repossession relates to the agreement assigned to ACA. (ECF No. 1 at 3-5). So the Loyolas should be estopped from denying the applicability of the arbitration to the parties that carried out the repossession—PAR and Lee-Barker.

But even if this Court believes there is a question about the enforceability of the arbitration provision, that question is for the arbitrator, as required by the provision and by *Henry Schein*, 139 S. Ct. at 528.

**VI.    The Court should dismiss the claims.**

Besides compelling arbitration, this Court should dismiss the claims. The FAA references a stay, but the Ninth Circuit has held this "[does] not limit the court's authority to grant a dismissal . . . ." *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (discussing 9 U.S.C. § 3). The *Sparling* court upheld a dismissal where "the arbitration clause . . . required [the plaintiff]     . . . to submit all claims to arbitration." *Id*.

In *Sparling*, the Ninth Circuit did not say whether the dismissal was with prejudice. But at least one other Circuit has applied the Ninth Circuit's reasoning to uphold dismissals with prejudice. *See Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1164 (5th Cir. 1992) (citing *Sparling*, 864 F.2d at 638).

Because all the claims fall within the scope of the arbitration provision, the Court should compel them all to arbitration and dismiss this case with prejudice or, at least, dismiss it without prejudice pending arbitration.

**CONCLUSION**

There is a valid arbitration provision, in writing; the underlying transaction involved interstate commerce; and the arbitration provision covers all the claims.

But even if the Court has reservations, issues about the arbitration provision's validity, enforceability, or scope, should be resolved by the arbitrator. So the claims should be compelled to arbitration and this case should be dismissed with prejudice.

Respectfully submitted this 15th day of February, 2019.

WOLFF, HISLOP & CROCKETT, PLLC

By: /s Aaron D. Dunham
Aaron D. Dunham, WSBA No. 46405

Attorney for Defendants
American Credit Acceptance, LLC,
PAR, Inc., and
Jillian Rae Lee-Barker dba Coeur d'Alene Valley Recovery Services

CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system. The NEF for the foregoing specifically identifies recipients of electronic notice:

FOR PLAINTIFFS

Alexander B. Trueblood
Trueblood Law Firm
1700 Seventh Ave., Suite 2100
Seattle, WA 98101-1360
Telephone: (206) 707-9685
Fax: (206) 832-4676
Email: alec@hush.com


Signed and dated at Spokane Valley, Washington this 15th day of February, 2019.

WOLFF, HISLOP & CROCKETT, PLLC

By:    */s Aaron D. Dunham*
Aaron D. Dunham, WSBA No. 46405
12209 E. Mission Ave., Suite 5
Spokane Valley, WA 99206
Telephone: (509) 927-9700
Fax: (509) 777-1800
Email: adunham@whc-attorneys.com