# *Exhibit A*

Declaration of Michael Coleman – Exhibit A
pg. 5

LHM TOYOTA SPOKANE
1208 W 3RD AVE
SPOKANE, WA 99201
5094558770

DealerCAP

FORM# 1001
CUST# 90330

## RETAIL PURCHASE AGREEMENT

Purchaser's Name(s): HECTOR LOYOLA LINDA LOYOLA
Address: 1409 E DELKE AVE SPOKANE WA 99208
Home Telephone: (509)979-1761    Cell Phone: _____    Work Telephone: _____
DOB: [redacted]    D.L./I.D.#: LOYOLHE472PG    Issuing State: WA    Exp. Date: 10/07/2021
E-mail Address: _____

Deal Number: 39969
Date: 10/30/2016
County: _____

The above information has been requested so that we may verify your identity. By signing below, you represent that you are at least 18 years of age and have authority to enter into this Agreement. The Odometer Reading for the Vehicle you are purchasing is accurate unless indicated otherwise. Please refer to the Odometer Mileage Statement for full disclosure.

| YEAR | MAKE | MODEL | COLOR | STOCK NO. |
|---|---|---|---|---|
| 2012 | DODGE | Journey | GRAY | T3388 |

| VIN/SERIAL NO. | ODOMETER READING | SALESPERSON |
|---|---|---|
| 3C4PDDBG9CT160048 | ☐ Not Accurate  91388 | MCLEAN, BRITTANY |

THE VEHICLE IS: ☐ NEW ☒ USED    TITLE BRAND DISCLOSURE: ☐ SALVAGE/REBUILT ☐ JUNK ☐ DESTROYED
PRIOR USE DISCLOSURE: ☐ DEMONSTRATOR ☐ LEASE ☐ RENTAL ☐ OTHER ☐ BUSINESS/GOVERNMENT ENTITY (Name and Address available upon request)

### WARRANTY STATEMENT

If the Vehicle you are purchasing is used for personal, family, or household (not commercial or business) purposes, the implied warranties of merchantability and fitness for a particular purpose apply unless, after negotiations between you and us, you agree to waive them. This means that our Dealership warrants only that the Vehicle will be fit for ordinary driving purposes and, if applicable, for any particular purposes stated in this Agreement.

Our Dealership expressly disclaims all express warranties, unless the box beside "Used Vehicle Limited Warranty Applies" is marked below. If we enter into a service contract with you at the time of, or within 90 days of, the date of this transaction, we may not disclaim the implied warranties. Any warranties by a manufacturer or supplier other than our Dealership are theirs, not ours, and only such manufacturer or supplier shall be liable for performance under such warranties. We neither assume nor authorize any other person to assume for us any liability in connection with the sale of the Vehicle and related goods and services.

**CONTRACTUAL DISCLOSURE STATEMENT** (USED VEHICLES ONLY) The information you see on the window form for this Vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale. Traducción española: Vea el dorso.

☐ USED VEHICLE LIMITED WARRANTY APPLIES. Please see the attached Limited Warranty

### WAIVER OF IMPLIED WARRANTIES

Attention Consumer: By signing below, you acknowledge discussing with the Dealership particular characteristics or parts of the Vehicle that are exempt from the implied warranties, and you further acknowledge receipt of the Waiver of Implied Warranties form, which further describes the specific items exempt from the implied warranties.

1. _____
2. _____
3. _____
4. _____

X _____

| | |
|---|---|
| CASH PRICE OF VEHICLE | 13482.59 |
| | |
| LANDCAR VTR | 199.00 |
| | |
| | |
| TRADE ALLOWANCE | 750.00 |
| DOCUMENTARY SERVICE FEE* | N/A |

Declaration of Michael Coleman - Exhibit A
pg.6

| TRADE-IN VEHICLE (1) INFORMATION | | | | TOTAL SELLING PRICE | 12931.59 |
|---|---|---|---|---|---|
| Year: 1998 | Make: TOYOTA | Model: SIENNA | Color: GREEN | | |
| VIN/Serial No: 4T3ZF13C7WU006772 | | Odometer Reading: ☐ Not Accurate   298510 | | License Fee | 170.00 |
| Trade-In Allowance: 750.00 | | Balance Owed & Lienholder: 800.00  NW TITLE LOANS | | | |

| TRADE-IN VEHICLE (2) INFORMATION | | | | | |
|---|---|---|---|---|---|
| Year: | Make: | Model: | Color: | SALES TAX | 1150.91 |
| VIN/Serial No: N/A | | Odometer Reading: N/A ☐ Not Accurate | | S/C TAX | 234.47 |
| Trade-In Allowance: N/A | | Balance Owed & Lienholder: N/A | | SUBTOTAL | 14486.97 |

**DOWN PAYMENT:** The sum of $ 1500.00 was received from you as a Down Payment. The Down Payment is **not** refundable, except as otherwise set forth in this Agreement.

X  _HL_

**\*DOCUMENTARY SERVICE FEE:** This Fee is not required by Law. It is an optional and negotiable Fee charged by our Dealership to cover our costs for providing administrative and documentary services in connection with this transaction and in carrying out the requirements of all applicable laws.

| LANDCAR GAP | 655.00 |
|---|---|

**USED VEHICLE EMISSIONS INSPECTION DISCLOSURE:** The owner of a vehicle may be required to spend up to $150.00 for repairs if the vehicle does not meet the vehicle emission standards under RCW Chapter 70.120. Unless expressly warranted by the motor vehicle dealer, the dealer is not warranting that this Vehicle will pass any emission tests required by federal or state law. X_____

| LANDCAR VSC | 2695.00 |
|---|---|

### OTHER MATERIAL UNDERSTANDINGS AND INTERGRATED DOCUMENTS

PLEASE SEE ATTACHED WE OWE - DELIVERY CONFIRMATION
☒ PLEASE SEE ATTACHED CONDITIONAL DELIVERY AGREEMENT
You have entered into a Service Contract with ___LANDCAR VSC___

| TRADE PAYOFF: | 800.00 |
|---|---|
| TOTAL DUE | 18636.97 |
| CASH DOWN | 1500.00 |
| REBATE | N/A |
| BALANCE TO FINANCE | 17136.97 |

**AGREEMENT TO ARBITRATE:** Purchaser(s) and Dealer ("Parties") agree to resolve by binding arbitration any Dispute that arises between them under or relating to this Agreement and transaction as set forth in Paragraph 20 on the reverse side. Either of the Parties may initiate an arbitration proceeding under the applicable rules of the JAMS, 1920 Main Street, Suite 300, Irvine, California 92614 (www.jamsadr.com); or the Better Business Bureau in the State and County where the Dealership is located; or another established Alternative Dispute Resolution Agency. By signing below, I acknowledge I have read Paragraph 20 on the reverse side and agree to be bound by the terms and conditions of this Agreement to Arbitrate. THE PARTIES UNDERSTAND THAT EXCEPT FOR THOSE DISPUTES SPECIFICALLY EXEMPTED FROM ARBITRATION, THEY ARE KNOWINGLY AND UNCONDITIONALLY WAIVING THEIR RIGHT TO LITIGATE ANY CLAIMS IN COURT, THEIR RIGHT TO A JURY TRIAL AND THEIR RIGHT TO PARTICIPATE AS A MEMBER OR REPRESENTATIVE IN ANY CLASS ACTION IN COURT OR THROUGH ARBITRATION.

The front and back of this document and any documents which are part of this transaction or incorporated herein comprise the entire agreement affecting this Retail Purchase Agreement and no other agreement or understanding of any nature concerning the same has been made or entered into, or will be recognized. I have read and accept the terms and conditions of this Agreement, including the terms and conditions that appear on the reverse side, and agree to them as if they were printed above my signature. I further acknowledge receipt of a copy of this Agreement. This Agreement shall not become binding until signed and accepted by an Authorized Dealership Representative.

_[signature]_ Purchaser
_[signature]_ Purchaser

_[signature]_ Accepted by Authorized Dealership Representative

To Reorder: Login into www.staplesssyprint.com or Call 1-800-237-2372  Item # 6973255-24503

Copyright © 2015 COK Global LLC All rights reserved. Washington (07/15)

Declaration of Michael Coleman - Exhibit A
pg.7

## ADDITIONAL AGREEMENTS BETWEEN DEALERSHIP AND PURCHASER(S)

1. **Terms Used in This Agreement:** This Retail Purchase Agreement contains the following words and phrases that appear throughout this Agreement and have particular meanings:
   - **Agreement** - Means this Retail Purchase Agreement together with any documents incorporated into this Agreement by reference, whether such reference is made in this Agreement or in the document itself.
   - **You, Your** - Means the Purchaser(s) identified on the front side of this Agreement.
   - **We, Us, Our** - Means the Dealership that is identified on the front side of this Agreement and its Authorized Representatives.
   - **Manufacturer** - Means the company that manufactured the Vehicle.
   - **Vehicle** - Means the Vehicle that you are purchasing from us as described on the front of this Agreement.
   - **Trade-In Vehicle** - Means the vehicle you are delivering to us as part of this transaction as identified on the front side of this Agreement.

2. **Our Right to Increase the Price:** We may increase the price of the Vehicle after we accept this Agreement if the Trade-In Vehicle is reappraised, the addition of new equipment is required by state or federal law, or the increase is caused by state or federal tax rate changes. If the price is increased, you may cancel this Agreement with full refund of any Deposit/Partial Payment, provided that the cancellation occurs prior to you taking delivery of the purchased Vehicle.

3. **Manufacturer's Design Changes:** In the event the Manufacturer changes or modifies the design of or any part or accessory of the Vehicle after your order for the Vehicle has been entered by us, you will not have any claim or right against us if the Vehicle does not contain such changes or modifications, nor shall we be required to effect such changes or modifications to the Vehicle.

4. **Your Representations and Warranties:** You represent, warrant and affirm to us that (a) You are not purchasing a new Vehicle for resale or export within the period beginning on the date the Vehicle title is issued to you and ending on the date one (1) year thereafter. You confirm that we are relying on this representation and agree that we would not sell the Vehicle to you without this representation. If we are required by the Manufacturer to forfeit or repay any manufacturer incentives, allowance and/or special pricing, or if we suffer any loss or harm as a result of your breach of this provision, you agree to indemnify and hold us harmless from any such cost, loss or harm suffered as a result of or arising because of your breach; (b) the Deposit/Partial Payment and any amounts due to us have been paid in full, any check given to us will be honored by your Bank, and that no part of the Deposit/Partial Payment has been loaned to you by us or any third party; (c) all statements made by you in this Agreement and any other documents completed in connection with this transaction are true and correct; and (d) you are who you have represented yourself to be and you have purchased the Vehicle for your own use and not on behalf of another person, unless you have disclosed otherwise to us.

5. **Your Representations Regarding the Trade-In Vehicle:** Any Trade-In Vehicle delivered by you to us in connection with this transaction shall be accompanied by a Certificate of Title or documents sufficient to enable us to obtain a Certificate of Title to the Trade-In Vehicle in accordance with applicable state law. You warrant that the Trade-In Vehicle delivered to us is properly titled to you, has never been titled as or declared a total loss/destroyed, salvage, junk, reconstructed, rebuilt, flood, or lemon buyback vehicle; that you have the right to sell or otherwise convey such vehicle; that such vehicle is free and clear of liens or encumbrances, except as may be noted on the front side of this Agreement; all emissions control equipment is on the vehicle and in satisfactory working order; and, unless you have told us otherwise, that you have not removed any equipment from the vehicle subsequent to our appraisal and that the odometer reading shown is accurate.

6. **Balance Owed on Trade-In Vehicle:** If you are delivering a Trade-In Vehicle in connection with this transaction and the actual amount of the Balance Owed on the Trade-In Vehicle is greater than the amount of the Balance Owed as listed in this Agreement, you agree to pay the difference to us. If the actual amount of the Balance Owed is less than the amount listed, we will pay or credit the difference to you.

7. **Our Appraisal of Your Trade-In Vehicle:** If you are delivering a Trade-In Vehicle to us in connection with this transaction and the delivery will not be made until delivery of the Vehicle being purchased, we shall have the right to reappraise your Trade-In Vehicle at the time of delivery. You understand that we may renegotiate the amount allowed for the Trade-In Allowance for the Trade-In Vehicle if (i) You fail to disclose that the Certificate of Title to the Trade-In Vehicle has been branded for any reason; (ii) the Trade-In Vehicle incurs substantial physical damage or latent mechanical defects arise before we take possession of the Trade-In Vehicle that could not have been reasonably discoverable at the time this Agreement is completed; (iii) the odometer reading reflects the addition of five hundred (500) miles or more between the time the Trade-In Vehicle was first appraised by us for purposes of determining the Trade-In Allowance and the time of actual delivery of the Trade-In Vehicle to us; or (iv) there is a discrepancy between the signed odometer statement and the mileage reflected on the Trade-In Vehicle's odometer or the actual mileage on the Trade-In Vehicle. If you are dissatisfied with the reappraisal, you may cancel this Agreement with full refund of any Deposit/Partial Payment, provided that the cancellation occurs prior to you taking delivery of the purchased Vehicle.

8. **Remedies Upon Rightful Cancellation:** You agree that we are not liable for any damages resulting from our failure to deliver the Vehicle if the failure is caused by the manufacturer, an accident, fire, act of nature or any other causes beyond our control. This Agreement may be renegotiated or canceled (with full refund of any Deposit/Partial Payment) if the Vehicle is not delivered to you as specified on the front side of this Agreement or pursuant to Paragraphs 2 or 7. If you have delivered a Trade-In Vehicle to us, the Trade-In Vehicle will be returned to you if we have not already sold it. If we have already sold the Trade-In Vehicle, we will refund the agreed upon Trade-In Allowance. Regardless of whether we return the Trade-In Vehicle or have already sold it, you shall be responsible for paying to us the Balance Owed on the Trade-In Vehicle if we have paid the Balance Owed to the Lienholder. We may keep any portion of the amount you have paid to us as a Deposit/Partial Payment and any Trade-In Allowance we owe to you to offset against the amount you owe us. If the actual amount you owe to us is greater than the amount of the Deposit/Partial Payment, you agree to pay the difference to us. If the actual amount you owe is less than the amount of the Deposit/Partial Payment, we will pay the difference to you. You are responsible for paying the cost of repairing any damage and any other losses, liabilities, damages, claims, costs and expenses arising out of your use, possession and control of the Vehicle.

9. **Purchaser's Default and Dealership's Remedies:** In the event you have agreed to pay the Balance to Finance in cash or financing is being obtained by you through a credit source of your choice and we do not receive the Balance to Finance from you at the time of delivery of the Vehicle or on the date promised on the front of this Agreement, you fail to perform any of your other obligations under this Agreement, or you breach any representation or warranty made by you to us, we shall be permitted, at our sole discretion, to the choice of remedies in this Agreement, which may be used separately or together, including: (1) cancel this Retail Purchase Agreement; (2) repossess the Vehicle without notice (if permitted by law); (3) rescind the sales transaction; (4) seek collection for amounts due; (5) retain any cash down payment made by you; and/or (6) in the event that you have delivered a Trade-In Vehicle as part of the consideration for your purchase of the Vehicle from us, to sell such Trade-In Vehicle and reimburse the Dealership out of the proceeds of such sale for any reasonable expenses incurred in connection with preparing and offering the Trade-In Vehicle for sale and any actual damages suffered by us as a result of your default. Regardless of whether we return the Trade-In Vehicle or have already sold it, you shall be responsible for paying to us the Balance Owed on the Trade-In Vehicle if we have paid the Balance Owed to the Lienholder and for any reasonable expenses incurred by us in connection with preparing or reconditioning the Trade-In Vehicle for sale. Any remedies in this Paragraph 9 shall be in addition to, and not in lieu of, any other remedies available under the Retail Purchase Agreement or at law or equity. Any waiver of all or part of a remedy hereunder is not a continuing waiver. If the actual amount you owe to us is greater than the amount of the down payment and/or proceeds from the sale of your Trade-In Vehicle, you agree to pay the difference to us upon demand and if the actual amount you owe is less, then we will pay the difference to you.

Declaration of Michael Coleman - Exhibit A
pg.8

10. **Conditional Deliveries:** If you have entered into a Conditional Delivery Agreement, the purchase of the Vehicle is conditioned on final approval of financing by a lender. If financing is not approved according to the agreed upon terms within four (4) calendar days (excluding weekends and legal holidays), this Agreement will be void and any Deposit/Partial Payment and/or Trade-In Vehicle you delivered to us will be returned to you less any amounts you owe to us, in accordance with this Agreement and the Conditional Delivery Agreement.

11. **Other Products and Lending Sources:** The Dealership offers its customers goods and services from various suppliers. The amounts charged to customers for such goods or services may be greater than the Dealership's cost, and/or the Dealership may receive a commission or other payment in connection with such sale. You are not required to purchase any other goods or services from us, nor are you required to finance the Balance to Finance under this Agreement with a particular lending source. In the event this Agreement includes a charge for other goods or services for which you must complete an application for coverage, and for any reason such coverage cannot be provided, you will receive a credit for the amount charged. If the cost of other goods or services was included in the amount to be financed in connection with this transaction, then this credit will be applied to the outstanding balance you owe to the Lender.

12. **Dealer-Assisted Financing:** If we assist you to obtain financing for this transaction, the Annual Percentage Rate may be negotiated with us and we may receive a fee, commission or other compensation from the Lender. We do not make any representations or warranties regarding whether you obtained the best rate or could have obtained a better rate from us or a third party.

13. **Tax Liability:** You understand that you are responsible for paying any sales, use or other tax, duty, or other fee imposed by any United States or foreign customs authority or any other federal, state or local government, law enforcement or regulatory agency in connection with this purchase and any additional taxes that may become due and owing, regardless of which party may have the primary tax liability.

14. **Dealership Security Interest:** Purchaser grants Dealership a security interest in the Vehicle to secure full payment under the Uniform Commercial Code. Dealership has all remedies of a secured party under the Uniform Commercial Code.

15. **CONTRACTUAL DISCLOSURE STATEMENT (USED VEHICLES ONLY):** The information you see on the window form for this Vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale. SPANISH TRANSLATION: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

16. **GOVERNING LAW:** THE TERMS AND CONDITIONS OF THIS AGREEMENT (INCLUDING ANY DOCUMENTS WHICH ARE A PART OF THIS TRANSACTION OR INCORPORATED HEREIN BY REFERENCE) AND ANY SALE HEREUNDER WILL BE GOVERNED BY THE LAWS OF THE STATE OF WASHINGTON.

17. **LIMIT ON DAMAGES:** TO THE EXTENT PERMITTED BY WASHINGTON LAW, PURCHASER SHALL NOT BE ENTITLED TO RECOVER FROM THE DEALERSHIP ANY CONSEQUENTIAL DAMAGES, DAMAGES TO PROPERTY, DAMAGES FOR LOSS OF USE, LOSS OF TIME, LOSS OF PROFITS OR INCOME, OR ANY OTHER INCIDENTAL DAMAGES.

18. **Severability:** Each provision hereof shall be interpreted in such manner as to be effective and valid under applicable law. If any provision hereof is held to be unenforceable or invalid under applicable law, the unenforceability or invalidity of such provision shall not impair the validity or enforceability of the remaining provisions.

19. **Entire Agreement and Signing Other Documents:** The front and back of this Agreement and any documents which are part of this transaction or incorporated herein by reference comprise the entire agreement affecting this transaction. No other agreement or understanding of any nature has been made or will be recognized. You agree to sign any and all documents necessary to complete the terms of this transaction.

20. **AGREEMENT TO ARBITRATE:** Purchaser(s) and Dealer ("Parties") agree, except as otherwise provided in this Arbitration Provision, to resolve by binding arbitration any Dispute that arises between them under or relating to this Agreement, whether based in part or in whole on contract, tort, common law, statute, regulation or equity, including but not limited to: any dispute related to or arising out of the application for credit; any negotiations, promises, representations, undertakings or warranties; the Vehicle and any products/services purchased from Dealer; the Retail Installment Contract (except where such Contract includes its own dispute resolution provision, in which case such provisions shall control any claim arising under or relating to said Contract); and any claims regarding the validity, enforceability or scope of this Arbitration Provision. The Parties retain the right to exercise self-help or provisional remedies, such as repossession, and to file a replevin action in court. In addition, neither Party is required to arbitrate any individual claim (as opposed to a class action) that is filed and properly within the jurisdiction of a small claims court (or equivalent state court). Until a Party requests arbitration, either Party may proceed with such other rights and remedies and shall not be deemed to have waived the right to request arbitration by doing so. A Party invoking arbitration after the filing of a court action must do so within thirty (30) days of the service of the Complaint or other pleading initiating the action or transferring the action to a higher trial court.

Arbitration proceedings shall be initiated and conducted before a single arbitrator selected in accordance with the Arbitration Rules then in effect of the selected Alternative Dispute Resolution Agency. If the procedures set forth herein conflict with the Arbitration Rules of the Alternative Dispute Resolution Agency, the procedures set forth in this Arbitration Provision shall control. If the Dealer initiates arbitration proceedings, it will pay the entire cost of the initial filing fees and any administrative or arbitrator's fees. If Purchaser initiates arbitration proceedings, he/she will pay any initial filing fees and administrative or arbitrator's fees up to a maximum of $500 and the Dealer shall pay any such fees and costs in excess of $500. Each Party shall be responsible for its own attorney and expert fees and any other costs incurred. The arbitrator may decide which Party is responsible for paying any costs and fees as part of the decision and award. The arbitration hearing shall be conducted in the county and state where the Dealership is located (unless the Parties agree otherwise) and the Parties consent to the jurisdiction of the courts of said county and state for purposes of enforcing this Arbitration Provision and the arbitrator's decision. The arbitrator shall apply federal and Washington law in making an award and shall issue a written decision with a supporting opinion. The decision of the arbitrator shall be final and binding, except for any right of appeal under the Federal Arbitration Act and applicable Arbitration Rules. The cost of appeal shall be borne by the appealing Party. If a Party unsuccessfully challenges the arbitrator's award or fails to comply with it, the other Party is entitled to recover the costs, including reasonable attorneys' fees, of defending or enforcing the award.

The Parties expressly agree that the Federal Arbitration Act (9 U.S.C. § 1, et seq.) shall govern any arbitration under this Agreement. This Arbitration Provision shall survive any termination of this Agreement. Nothing in this Arbitration Provision shall be interpreted as limiting or precluding the arbitrator from awarding monetary damages or other relief provided for by law. If any part of this Arbitration Provision is found to be void or unenforceable, the remaining provisions shall remain in full force and effect, including but not limited to the Parties' waiver of the right to have a trial by jury and payment of attorney fees and costs.