FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 15, 2019

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| HECTOR LOYOLA and LINDA LOYOLA,<br><br>               Plaintiffs,<br><br>     v.<br><br>AMERICAN CREDIT ACCEPTANCE LLC; PAR INC.; and JILLIAN RAE LEE-BARKER, doing business as Coeur d'Alene Valley Recovery Services,<br><br>               Defendants. | No.   2:19-cv-00002-SMJ<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS PLAINTIFFS' CLAIMS** |

Before the Court, without oral argument, is Defendants American Credit Acceptance LLC, Par Inc., and Jillian Rae Lee-Barker's Motion to: (1) Compel Arbitration and (2) Dismiss All Claims, ECF No. 6. Plaintiffs Hector and Linda Loyola allege Defendants are jointly and severally liable for repossessing a motor vehicle in breach of the peace. ECF No. 1. The Loyolas sue Defendants Par and Lee-Barker for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692f(6); sue Defendant American for violating the Uniform Commercial Code ("UCC"), as codified at Revised Code of Washington ("RCW") section 62A.9A-609(b)(2); and sue all Defendants for violating the Consumer Protection

ORDER GRANTING DEFENDANTS' MOTION TO COMPEL
ARBITRATION AND DISMISS PLAINTIFFS' CLAIMS - 1

Act ("CPA"), RCW 19.86.020. *Id.* at 3–5. Defendants seek to compel the Loyolas to arbitrate all their claims. Having reviewed the pleadings and the file in this matter, the Court is fully informed and grants the motion.

## BACKGROUND

On October 30, 2016, the Loyolas bought a 2012 Dodge Journey on credit from LHM Toyota Spokane, in Spokane, Washington. ECF No. 8-1 at 2–3; ECF No. 8-2 at 2–3; ECF No. 9-1 at 2; ECF No. 9-2 at 2. As part of the transaction, the Loyolas signed both a Retail Purchase Agreement and a Retail Installment Sale Contract. ECF No. 8-1 at 2–3; ECF No. 8-2 at 2–3; ECF No. 9-1 at 3; ECF No. 9-2 at 3. In each document, the Loyolas gave the dealership a security interest in the vehicle. ECF No. 1 at 2; ECF No. 8-1 at 5; ECF No. 8-2 at 2, 4.

The dealership assigned the Retail Installment Sale Contract and security interest to American. ECF No. 1 at 2; ECF No. 8-2 at 3. The Loyolas subsequently fell behind on their vehicle payments. ECF No. 1 at 2; ECF No. 8 at 3. American hired Par to repossess the vehicle on its behalf and Par, in turn, hired Lee-Barker to accomplish the repossession in its stead. ECF No. 1 at 2; ECF No. 8 at 3.

The Loyolas allege that, on November 26, 2018, Lee-Barker repossessed the vehicle by breaking and removing the latch on their locked gate, stealing the latch, entering the fenced area surrounding their home, and taking the vehicle from that location. ECF No. 1 at 2.

The Loyolas filed this lawsuit on January 2, 2019, alleging Defendants are jointly and severally liable for violating the FDCPA, UCC, and CPA by repossessing the vehicle in breach of the peace. ECF No. 1. The Retail Purchase Agreement contains an arbitration agreement, which provides,

> Purchaser(s) and Dealer ("Parties") agree to resolve by binding arbitration any Dispute that arises between them under or relating to this Agreement and transaction as set forth in Paragraph 20 . . . .
>
> . . . .
>
> 20. **AGREEMENT TO ARBITRATE:** Purchaser(s) and Dealer ("Parties") agree, except as otherwise provided in this Arbitration Provision, to resolve by binding arbitration any Dispute that arises between them under or relating to this Agreement, whether based in part or in whole on contract, tort, common law, statute, regulation or equity, including but not limited to: any dispute related to or arising out of the application for credit; any negotiations, promises, representations, undertakings or warranties; the Vehicle and any products/services purchased from Dealer; the Retail Installment Contract (except where such Contract includes its own dispute resolution provision, in which case such provisions shall control any claim arising under or relating to said Contract); and any claims regarding the validity, enforceability or scope of this Arbitration Provision. The Parties retain the right to exercise self-help or provisional remedies, such as repossession, and to file a replevin action in court. In addition, neither Party is required to arbitrate any individual claim (as opposed to a class action) that is pled and properly within the jurisdiction of a small claims court (or equivalent state court). Until a Party requests arbitration, either Party may proceed with such other rights and remedies and shall not be deemed to have waived the right to request arbitration by doing so. A Party invoking arbitration after the filing of a court action must do so within thirty (30) days of the service of the Complaint or other pleading initiating the action or transferring the action to a higher trial court. Arbitration

proceedings shall be initiated and conducted before a single arbitrator selected in accordance with the Arbitration Rules then in effect of the selected Alternative Dispute Resolution Agency. If the procedures set forth herein conflict with the Arbitration Rules of the Alternative Dispute Resolution Agency, the procedures set forth in this Arbitration Provision shall control. If the Dealer initiates arbitration proceedings, it will pay the entire cost of the initial filing fees and any administrative or arbitrator's fees. If Purchaser initiates arbitration proceedings, he/she will pay any initial filing fees and administrative or arbitrator's fees up to a maximum of $500 and the Dealer shall pay any such fees and costs in excess of $500. Each Party shall be responsible for its own attorney and expert fees and any other costs incurred. The arbitrator may decide which Party is responsible for paying any costs and fees as part of the decision and award. The arbitration hearing shall be conducted in the county and state where the Dealership is located (unless the Parties agree otherwise) and the Parties consent to the jurisdiction of the courts of said county and state for purposes of enforcing this Arbitration Agreement and the arbitrator's decision. The arbitrator shall apply federal and Washington law in making an award and shall issue a written decision with a supporting opinion. The decision of the arbitrator shall be final and binding, except for any right of appeal under the Federal Arbitration Act and applicable Arbitration Rules. The cost of appeal shall be borne by the appealing Party. If a Party unsuccessfully challenges the arbitrator's award or fails to comply with it, the other Party is entitled to recover the costs, including reasonable attorneys' fees, of defending or enforcing the award.

The Parties expressly agree that the Federal Arbitration Act (9 U.S.C. § 1, et seq.) shall govern any arbitration under this Agreement. This Arbitration Provision shall survive any termination of this Agreement. Nothing in this Arbitration Provision shall be interpreted as limiting or precluding the arbitrator from awarding monetary damages or other relief provided for by law. If any part of this Arbitration Provision is found to be void or unenforceable, the remaining provisions shall remain in full force and effect, including but not limited to the Parties' waiver of the right to have a trial by jury and payment of

attorney fees and costs.

ECF No. 8-1 at 3, 5.

On February 5, 2019, Defendants invoked this arbitration agreement, in writing, as to all of the Loyolas' claims against them. ECF No. 7 at 2. The Loyolas refused to arbitrate their claims against Defendants. *Id.*

## LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Further,

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction . . . in a civil action . . . of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4. "[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* But "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." *Id.*

The Court's basic role under the FAA is to determine whether a valid arbitration agreement exists between the litigants and, if so, whether their agreement encompasses the dispute at issue. *See Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (en banc). The Court may decide as a matter of law whether a valid arbitration agreement exists between the litigants, but it may do so "[o]nly when there is no genuine issue of fact concerning the formation of the agreement." *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991) (internal quotation marks omitted). Further, when the party opposing arbitration contends he or she has no valid arbitration agreement with the party seeking arbitration, the Court "should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Id.*

## DISCUSSION

**A.    The arbitration agreement encompasses all disputes at issue here.**

The litigants do not dispute that this case concerns "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction." 9 U.S.C. § 2. Instead, the litigants dispute the scope of the arbitration agreement.

Under the FAA, contracting parties "may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their

agreement covers a particular controversy.'" *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (quoting *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)). "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Id.* "Just as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator."[1] *Id.* at 530.

"[C]ourts 'should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.'" *Id.* at 531 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options*, 514 U.S. at 944. Under

---

[1] "To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists. But if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Schein*, 139 S. Ct. at 530 (citation omitted). Here, as discussed below, the arbitration agreement is enforceable against the Loyolas and Defendants may enforce it under assignment and agency principles.

Washington state law, the parties' intent "may be discovered not only from the actual language of the agreement, but also from 'viewing the contract as a whole, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of respective interpretations advocated by the parties.'" *Scott Galvanizing, Inc. v. Nw. EnviroServs., Inc.*, 844 P.2d 428, 432 (Wash. 1993) (quoting *Berg v. Hudesman*, 801 P.2d 222, 228 (Wash. 1990)).

Here, the arbitration agreement provides,

Purchaser(s) and Dealer ("Parties") agree to resolve by binding arbitration *any Dispute that arises between them under or relating to this Agreement and transaction* as set forth in Paragraph 20 . . . .

. . . .

20. **AGREEMENT TO ARBITRATE:** Purchaser(s) and Dealer ("Parties") agree, except as otherwise provided in this Arbitration Provision, to resolve by binding arbitration *any Dispute that arises between them under or relating to this Agreement*, whether based in part or in whole on contract, tort, common law, statute, regulation or equity, including but not limited to: *any dispute related to or arising out of . . . the Retail Installment Contract* (except where such Contract includes its own dispute resolution provision,[2] in which case such provisions shall control any claim arising under or relating to said Contract); and *any claims regarding the validity, enforceability or scope of this Arbitration Provision*. . . .

ECF No. 8-1 at 3, 5 (emphasis added).

---

[2] Despite the Loyolas' argument to the contrary, the Retail Installment Sale Contract does not include its own dispute resolution provision. *See* ECF No. 8-2.

ORDER GRANTING DEFENDANTS' MOTION TO COMPEL
ARBITRATION AND DISMISS PLAINTIFFS' CLAIMS - 8

This provision is clear and unmistakable evidence that the contracting parties agreed to arbitrate both (1) the merits of all disputes relating to the security interest created through their transaction and (2) all gateway questions concerning the arbitrability of those disputes, including the validity, enforceability, and scope of the arbitration agreement. Considering the arbitration agreement's plain language, the Court concludes it encompasses all disputes at issue here.

**B.      The arbitration agreement is enforceable.**

"[B]efore referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." *Henry Schein*, 139 S. Ct. at 530. The FAA provides that an arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision is known as the "saving clause."

"[T]he saving clause recognizes only defenses that apply to 'any' contract" and "offers no refuge for 'defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.'" *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1622 (2018) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). "In this way the clause establishes a sort of 'equal-treatment' rule for arbitration contracts" and "permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as . . . unconscionability." *Id.* (quoting *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S.

Ct. 1421, 1426 (2017), and *Concepcion*, 563 U.S. at 339).

Additionally, the saving clause only recognizes specific challenges to an arbitration agreement, not general challenges to a contract as a whole.[3] *See Rent-A-Ctr.*, 561 U.S. at 70. Thus, "[u]nless a party specifically challenges the validity of the agreement to arbitrate, both sides may be required to take all their disputes—including disputes about the validity of their broader contract—to arbitration." *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 538 (2019).

Here, the Loyolas raise four challenges, three of which target the enforceability of the Retail Purchase Agreement as a whole rather than the arbitration agreement in particular, and one of which fails at this stage.

### 1. The Loyolas' first three challenges to enforceability are reserved for arbitration.

First, the Loyolas argue the Retail Installment Sale Contract's integration clause nullifies the entire Retail Purchase Agreement, including the arbitration agreement. Second, the Loyolas argue the arbitration agreement's existence alongside the Retail Installment Sale Contract violates the single document rule of RCW 63.14.020. Third, the Loyolas argue the arbitration agreement is procedurally

---

[3] Yet, "[t]he issue of the agreement's 'validity' is different from the issue whether any agreement between the parties 'was ever concluded.'" *Rent-A-Ctr.*, 561 U.S. at 71 n.2 (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006)). Here, as discussed below, the arbitration agreement is enforceable against the Loyolas and Defendants may enforce it under assignment and agency principles.

unconscionable.

The Loyolas' first three challenges frame the issues so as to render the arbitration agreement's enforceability inseparable from the Retail Purchase Agreement's enforceability. In other words, one may decide whether the arbitration agreement is enforceable only by deciding whether the Retail Purchase Agreement is enforceable. *See Townsend v. Quadrant Corp.*, 268 P.3d 917, 921–22 (Wash. 2012). Therefore, pursuant to the arbitration agreement's delegation clause, the Loyolas' first three challenges are reserved for arbitration.

### 2. The Loyolas' substantive unconscionability argument partly fails on the merits and is partly reserved for arbitration.

Fourth, the Loyolas argue the arbitration agreement is substantively unconscionable. This is the Loyolas' only challenge to enforceability that both (1) invokes a generally applicable contract defense and (2) narrows the contention to the arbitration agreement in particular rather than the contract as a whole.

"General contract defenses such as unconscionability may invalidate arbitration agreements." *McKee v. AT&T Corp.*, 191 P.3d 845, 851 (Wash. 2008). "[S]ubstantive unconscionability alone can support a finding of unconscionability." *Adler v. Fred Lind Manor*, 103 P.3d 773, 782 (Wash. 2004)). "The proponent of a contract need only prove the existence of the contract and the other party's objective

manifestation of intent to be bound thereby[4] . . . . At that point, the burden shifts to the party seeking to avoid the contract to prove a defense to the contract's enforcement." *Retail Clerks Health & Welfare Tr. Funds v. Shopland Supermkt., Inc.*, 640 P.2d 1051, 1054 (Wash. 1982).

"[A] term is substantively unconscionable where it is overly or monstrously harsh, is one-sided, shocks the conscience, or is exceedingly calloused." *Hill v. Garda CL Nw., Inc.*, 308 P.3d 635, 638 (Wash. 2013). "Severance is the usual remedy for substantively unconscionable terms, but where such terms 'pervade' an arbitration agreement, [Washington state courts] 'refuse to sever those provisions and declare the entire agreement void.'" *Gandee v. LDL Freedom Enters., Inc.*, 293 P.3d 1197, 1199–200 (Wash. 2013) (quoting *Adler*, 103 P.3d at 788). Substantively unconscionable terms "pervade" an arbitration agreement if severing them would "significantly alter both the tone of the arbitration clause and the nature of the arbitration contemplated by the clause," and would "require essentially a rewriting

---

4 "[A] party's signature on the contract is objective evidence of the party's intent to be bound by the contract." *Yakima Cty. (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima*, 858 P.2d 245, 255 (Wash. 1993). Defendants have provided signed copies of the Retail Purchase Agreement and Retail Installment Sale Contract. ECF No. 8-1 at 2–5; ECF No. 8-2 at 2–5. The Loyolas do not dispute that those documents contain their signatures. *See* ECF No. 9-1 at 3; ECF No. 9-2 at 3. Therefore, Defendants have proven the existence of a contract and the Loyolas' objective manifestation of intent to be bound by it. The burden then shifts to the Loyolas to prove the arbitration agreement within that contract is substantively unconscionable.

ORDER GRANTING DEFENDANTS' MOTION TO COMPEL
ARBITRATION AND DISMISS PLAINTIFFS' CLAIMS - 12

of the arbitration agreement." *Id.* at 1201–02.

The Loyolas argue the arbitration agreement is substantively unconscionable because it relegates the consumer's likely claims to arbitration while reserving self-help and provisional remedies, such as repossession and replevin, for claims most likely to be raised by the dealership. Washington state courts have rejected this argument. "Although the arbitration agreement reserves the right to take to court disputes that are more likely to be raised by [the defendant], either party may litigate those disputes. And although the agreement compels the parties to take other disputes to arbitration, both parties are so compelled." *Walters v. A.A.A. Waterproofing, Inc.*, 85 P.3d 389, 393 (Wash. Ct. App. 2004), *remanded for recons. on other grounds*, 108 P.3d 1227 (Wash. 2005).

The Loyolas argue the arbitration agreement is substantively unconscionable because its fees-and-costs structure for arbitration and appeal both (1) removes the consumer's right to recover fees and costs to which he or she is entitled by law, and (2) imposes on the consumer the risk of paying fees or costs not allocated to him or her by law. The Loyolas cite no legal authority to support this argument. Regardless, this argument misreads the arbitration agreement, which provides,

> If the Dealer initiates arbitration proceedings, it will pay the entire cost of the initial filing fees and any administrative or arbitrator's fees. If Purchaser initiates arbitration proceedings, he/she will pay any initial filing fees and administrative or arbitrator's fees up to a maximum of $500 and the Dealer shall pay any such fees and costs in excess of $500. Each Party shall be responsible for its own attorney and expert fees and

any other costs incurred. The arbitrator may decide which Party is responsible for paying any costs and fees as part of the decision and award. . . . *The arbitrator shall apply federal and Washington law in making an award* . . . . The cost of appeal shall be borne by the appealing Party. If a Party unsuccessfully challenges the arbitrator's award or fails to comply with it, the other Party is entitled to recover the costs, including reasonable attorneys' fees, of defending or enforcing the award.

. . . Nothing in this Arbitration Provision shall be interpreted as limiting or precluding the arbitrator from awarding monetary damages or other relief provided for by law.

ECF No. 8-1 at 5 (emphasis added).

This provision requires an arbitrator to apply federal and Washington state law in all respects when making an award. If the arbitrator decides in favor of the Loyolas, he or she shall award them all fees and costs to which they are entitled by law. If the arbitrator decides against the Loyolas, he or she shall not require them to pay fees or costs not allocated to them by law. If the arbitrator decides partly in favor of and partly against the Loyolas, he or she shall both award and allocate such fees and costs in accordance with the law governing each claim. While this legal-compliance requirement does not expressly apply to fees and costs in an arbitration appeal, the arbitration agreement and governing-law provision together imply it.[5]

---

[5] The governing-law provision reads, "THE TERMS AND CONDITIONS OF THIS AGREEMENT (INCLUDING ANY DOCUMENTS WHICH ARE PART OF THIS TRANSACTION OR INCORPORATED HEREIN BY REFERENCE) AND ANY SALE HEREUNDER WILL BE GOVERNED BY THE LAWS OF THE STATE OF WASHINGTON." ECF No. 8-1 at 5; *accord* ECF No. 8-2 at 5 ("Federal law and the law of the state of [Washington] apply to this contract.").

ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS PLAINTIFFS' CLAIMS - 14

Even so, the arbitration agreement's fees-and-costs terms are severable: "[i]f any part of this Arbitration Provision is found to be void or unenforceable, the remaining provisions shall remain in full force and effect." *Id.* The fees-and-costs terms do not pervade the arbitration agreement to such an extent that severing them would significantly alter its tone or the nature of the arbitration it contemplates. Similarly, severing the fees-and-costs terms would not require essentially rewriting the arbitration agreement. The rest of it could easily be enforced as written.

Regardless, the Loyolas' challenge to the arbitration agreement's fees-and-costs terms is speculative and unripe at this stage of litigation. "[W]here . . . a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Adler*, 103 P.3d at 785 (omission in original) (quoting *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 92 (2000)). "[O]nce prohibitive costs are established, the opposing party . . . must present contrary offsetting evidence to enforce arbitration." *Id.* at 786 (omission in original) (quoting *Mendez v. Palm Harbor Homes, Inc.*, 45 P.3d 594, 607 (Wash. Ct. App. 2002)). "Such evidence may include an offer to pay all or part of the arbitration fees and costs." *Id.*

Here, the Loyolas present no evidence showing they will likely incur prohibitive fees or costs if compelled to arbitrate their claims against Defendants. In these situations, Washington state courts may authorize an opportunity for

limited discovery before determining whether an arbitration agreement's fees-and-costs terms are substantively unconscionable. *See, e.g.*, *id.* But these added procedures are unnecessary where, as here, the arbitration agreement's fees-and-costs terms are severable even if substantively unconscionable. It is sufficient for the Loyolas to raise their concerns about fees and costs in arbitration, if necessary. Therefore, pursuant to the arbitration agreement's delegation clause, this sole aspect of the Loyolas' substantive unconscionability argument is reserved for arbitration.

The Court rejects all other aspects of the Loyolas' substantive unconscionability argument because they have failed to demonstrate the arbitration agreement is overly or monstrously harsh, is one-sided, shocks the conscience, or is exceedingly calloused. After giving the Loyolas the benefit of all reasonable doubts and inferences, the Court concludes no genuine issue of fact exists concerning the arbitration agreement's formation, and the agreement is enforceable.

## C. The nonsignatory Defendants may enforce the arbitration agreement against the signatory Plaintiffs.

"[T]raditional principles of state law allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel . . . ." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (internal quotation marks omitted). Thus, "a litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law

allows the litigant to enforce the agreement." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (citing *Arthur Andersen*, 556 U.S. at 632).

Defendants, who are all nonsignatories to the arbitration agreement, seek to compel the Loyolas to arbitrate their claims against them under the terms of that agreement. Defendants rely on different doctrines to support their individual claims. They argue they each may enforce the arbitration agreement because (1) the dealership assigned its contractual rights to American, (2) Par and Lee-Barker were agents of American in exercising those rights, and (3) the Loyolas are estopped from avoiding arbitration because their claims are intertwined with the contract providing those rights. Thus, the issue is whether, under Washington state law, principles of assignment, agency, and estoppel permit Defendants to enforce the arbitration agreement against the Loyolas.

"General contract . . . principles apply in determining the enforcement of an arbitration agreement by or against nonsignatories." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009); *accord McKee*, 191 P.3d at 851. Under Washington state law, these principles include "assumption," "agency," and "estoppel," among others. *Satomi Owners Ass'n v. Satomi, LLC*, 225 P.3d 213, 230 n.22 (Wash. 2009) (quoting *Mundi*, 555 F.3d at 1045); *Woodall v. Avalon Care Ctr.-Fed. Way, LLC*, 231 P.3d 1252, 1254 (Wash. Ct. App. 2010).

//

**1.    The Loyolas are not estopped from challenging Defendants'
standing to enforce the arbitration agreement.**

"Equitable estoppel 'precludes a party from claiming the benefits of a
contract while simultaneously attempting to avoid the burdens that contract
imposes.'" *Townsend*, 268 P.3d at 922 (quoting *Mundi*, 555 F.3d at 1045–46). But
the Ninth Circuit "ha[s] never previously allowed a non-signatory defendant to
invoke equitable estoppel against a signatory plaintiff." *Rajagopalan v. NoteWorld,
LLC*, 718 F.3d 844, 847 (9th Cir. 2013) (involving Washington state law).

Further, the Loyolas do not allege Defendants breached the contract and
instead claim they violated the FDCPA, UCC, and CPA by repossessing the vehicle
in breach of the peace. *See id.* at 847–48. While the Loyolas' statutory claims
certainly relate to the contract, they do not arise from it directly. Thus, Defendants
may not compel arbitration solely on the basis of equitable estoppel.

**2.    American may enforce the arbitration agreement under
assignment principles.**

As the assignee of the dealership's interest in the Retail Installment Sale
Contract, American has standing to enforce the agreement against the Loyolas
under RCW 62A.3-301. *See In re Jones*, 583 B.R. 749, 752 (Bankr. W.D. Wash.
2018) (involving Washington state law); *see also* RCW 62A.2-210. "An assignee
steps into the shoes of the assignor, and has all of the rights of the assignor." *Estate
of Jordan v. Hartford Acc. & Indem. Co.*, 844 P.2d 403, 407 (Wash. 1993). "The

ORDER GRANTING DEFENDANTS' MOTION TO COMPEL
ARBITRATION AND DISMISS PLAINTIFFS' CLAIMS - 18

assignee's rights include not only those identified in the contract, but also applicable statutory rights." *Puget Sound Nat. Bank v. State Dep't of Revenue*, 868 P.2d 127, 132 (Wash. 1994). "Where a secured claim is assigned, the collateral is ordinarily assigned as well." *Jones*, 583 B.R. at 752 (quoting Restatement (Second) of Contracts § 340 cmt. b (Am. Law Inst. 1981)). "The assignment of a security interest does not destroy its purchase money status." *Id.*

The Loyolas argue American cannot enforce the arbitration agreement because it appears in the Retail Purchase Agreement only and the dealership never expressly assigned its interest in that specific contract. Indeed, the assignment, which appears solely in the Retail Installment Sale Contract, reads, "Seller assigns its interest in *this contract* to <u>AMERICAN</u>." ECF No. 8-2 at 3 (italics added). And, the Retail Installment Sale Contract contains an integration clause. *Id.* Yet, the Retail Purchase Agreement executed on the same date provides, "this document and *any documents which are part of this transaction* . . . comprise the entire agreement affecting this transaction." ECF No. 8-1 at 5 (emphasis added); *accord id.* at 3. The transaction was unitary: the purchase and sale of a vehicle on credit. Likewise, the Retail Purchase Agreement and Retail Installment Sale Contract together comprise the singular agreement governing that transaction. Moreover, the arbitration agreement itself says it applies not only to disputes concerning the Retail Purchase Agreement, but also to "any dispute related to or arising out of . . . *the Retail*

*Installment Contract.*" ECF No. 8-1 at 5 (emphasis added); *accord id.* at 3.

Considering the entire context in which the contract was entered into,[6] American has demonstrated that it obtained the right to enforce the arbitration agreement by virtue of assignment.

### 3. Par and Lee-Barker may enforce the arbitration agreement under agency principles.

Washington state law is clear that "[a] company's agent, though a nonsignatory, is *bound* by an arbitration agreement." *Raven Offshore Yacht, Shipping, LLP v. F.T. Holdings, LLC*, 400 P.3d 347, 351 (Wash. Ct. App. 2017) (emphasis added). It is less clear whether a nonsignatory agent may *enforce* an arbitration agreement as a signatory principal can.[7]

At least one Washington state court has suggested it "may allow a nonsignatory to compel arbitration under 'agency and related principles . . . when, as a result of the nonsignatory's close relationship with a signatory, a failure to do so would eviscerate the arbitration agreement.'" *Wiese v. Cach, LLC*, 358 P.3d 1213, 1222 (Wash. Ct. App. 2015) (omission in original) (quoting *PRM Energy*

---

[6] *See Scott Galvanizing*, 844 P.2d at 432 (quoting *Berg*, 801 P.2d at 228) (discussing the context rule).

[7] *See generally Britton v. Co-Op Banking Grp.*, 4 F.3d 742, 744 (9th Cir. 1993) ("The right to compel arbitration stems from a contractual right. That contractual right may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration. An entity that is neither a party to nor agent for nor beneficiary of the contract lacks standing to compel arbitration . . . ." (citations omitted)).

*Sys., Inc. v. Primenergy, LLC*, 592 F.3d 830, 837 (8th Cir. 2010)). Doing so is appropriate where the claims against the signatory principal and nonsignatory agent "are 'based on the same facts . . . and are inherently inseparable.'" *Id.* (omission in original) (quoting *Townsend v. Quadrant Corp.*, 224 P.3d 818 (Wash. Ct. App. 2009), *aff'd*, 268 P.3d 917).

Here, when the Loyolas fell behind on their vehicle payments, American hired Par to repossess the vehicle on its behalf and Par, in turn, hired Lee-Parker to accomplish the repossession in its stead. ECF No. 1 at 2; ECF No. 8 at 3. The Loyolas allege Defendants are jointly and severally liable for violating the FDCPA, UCC, and CPA by repossessing the vehicle in breach of the peace. ECF No. 1 at 3–5. As the Loyolas allege, "each defendant was the agent or employee of each of the other defendants and was acting within the course and scope of such agency or employment." *Id.* at 3. Thus, Par and Lee-Barker had a close relationship with American, who held all the contractual rights of the signatory dealership via assignment. The Loyolas' claims against Par and Lee-Barker are based on the same facts as, and are inherently inseparable from, their claims against American. Allowing American to enforce the arbitration while disallowing Par and Lee-Barker from doing so on the same claims would eviscerate the arbitration agreement.

Considering all, Par and Lee-Barker have demonstrated that they may enforce the arbitration agreement by virtue of agency.

**D.    The Court denies the Loyolas' request for judicial notice.**

The Loyolas ask the Court to take judicial notice of two documents from the California Department of Consumer Affairs, Bureau of Security and Investigative Services: (1) a 2016 administrative accusation against Lee-Barker and (2) a 2017 decision and order adopting a stipulated settlement and disciplinary order, to which Lee-Barker agreed. ECF No. 9-3 at 2; ECF No. 9-4 at 3–16; ECF No. 9-5 at 1–9. The Loyolas obtained these public records from an official state government website. ECF No. 9-3 at 2.

The Court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). The Court "may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Under this authority, the Court "may take judicial notice of some public records, including the 'records and reports of administrative bodies.'" *United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003) (quoting *Interstate Nat. Gas Co. v. S. Cal. Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1953)). And, the Court "may take judicial notice of 'official information posted on a governmental website, the accuracy of which [is] undisputed.'" *Ariz. Libertarian Party v. Reagan*, 798 F.3d 723, 727 n.3 (9th Cir. 2015) (alteration in original) (quoting *Dudum v. Arntz*, 640 F.3d 1098, 1101 n.6 (9th Cir. 2011)).

The Court cannot take judicial notice of the contents of the documents the Loyolas presented because those contents are subject to reasonable dispute. The accusation is just that—a mere allegation against Lee-Barker. And the stipulated settlement and disciplinary order provides, "[t]he admissions made by [Lee-Barker] herein . . . shall not be admissible in any other criminal or civil proceeding." ECF No. 9-5 at 5. Even if the Court took judicial notice of these documents, they would not alter any aspect of the analysis above because they are irrelevant to resolving the issues presented. Thus, the Court denies the Loyolas' request for judicial notice.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendants' Motion to: (1) Compel Arbitration and (2) Dismiss All Claims, **ECF No. 6**, is **GRANTED**.

2. All claims are **DISMISSED WITHOUT PREJUDICE** and Plaintiffs are **COMPELLED TO ARBITRATE** those claims under the terms of the arbitration agreement, ECF No. 8-1 at 3, 5.

3. Any other pending motions are **DENIED AS MOOT**.

4. Any hearings and deadlines are **STRICKEN**.

5. The Clerk's Office is directed to enter **JUDGMENT** of dismissal and **CLOSE** this file.

//

//

1    **IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and

2    provide copies to all counsel.

3        **DATED** this 15th day of April 2019.

4        _____
         SALVADOR MENDOZA, JR.
5        United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20